The People of the State of New York ex rel. James O. Sebring, Relator, *v.* Munson B. Dowd, James Chambers and Robert F. Simmons, as Assessors of the City of Corning, Steuben County, N. Y., Respondents.

Supreme Court, Steuben County, May, 1922.

**Taxes — assessment of real property in village — certiorari — when valuation placed on residence property not excessive — when property of exceptional character should be assessed at its cost price.**

Where the purchase or improvement of real property, exceptional in character, neither designed to yield a rental or income nor to be used for commercial purposes but wholly or mainly for personal use, benefit and gratification, is of recent date, the property should be assessed at its cost price in the absence of proof that it has since deteriorated in value.

One of the most valuable residence properties in the city of Corning, of comparatively modern type, construction and equipment, and in a good state of repair, was purchased by relator in 1917 for the sum of $15,000. Since then he has erected a garage of design and material similar to the house, perfected the electric lighting system, laid some thousands of feet of hardwood flooring and at the present time the house could not be reproduced for $100,000. An assessment of the property made in 1921 in the sum of $30,000, of which $7,000 was fixed by the local assessors as the value of the land exclusive of the buildings, was attacked on the ground of overvaluation and of unequal and disproportionate valuation. *Held,* on consideration of the testimony, that relator's property and sixteen other pieces, concededly comprising the finest residential property in the city and forming as they do a distinct and plainly distinguishable kind of property, were assessed in the amount that the proof plainly shows they should be, a motion to confirm the report of the referee appointed in a certiorari proceeding to review the assessment on relator's property will be granted and the writ dismissed, with costs and disbursements.

Motion to confirm the report of a referee in certiorari to review an assessment.

*Justin V. Purcell,* for motion.

*James O. Sebring,* opposed.

Thompson, J. The dwelling premises of relator, purchased from the trustee of the creditors of one Drake in 1917 for the sum of $15,000, the respondents, in 1921, assessed at the sum of $30,000, $7,000 of which they have fixed as the value of the land, exclusive of buildings.

The assessment is attacked upon two grounds, *first,* overvaluation; *second,* unequal and disproportionate valuation.

Here we have the report of the referee appointed in certiorari advising that the proceeding be dismissed.

Remembering that the statute requires that all real and personal property subject to taxation shall be assessed at the full value thereof (Tax Law, § 6), and discussing these questions in their order, I observe that the proof shows that this property is one of

the most valuable residence properties in the city of Corning; located in this city's finest residential district, of comparatively modern type, construction and equipment, and in a good state of repair; that relator since his purchase of it in 1917 has erected thereon a garage of design and material similar to the house; that he has perfected the electric lighting system and has laid some thousands of feet of hardwood flooring, and that the house could not be reproduced at this time for less than $100,000.  Each of these elements were proper to be consulted by the assessors in fixing the value of these premises.  They were not bound to consider alone the price paid by relator for them, or the opinion evidence of brokers.  The true significance of such testimony can only appear when viewed with its attendant circumstances and particulars.

Evidence of but one sale of similar property is found in the record.  Surely in this situation the assessors would naturally apply other tests in arriving at the true value of the premises. Intrinsic value was a proper element for them to consider.  *People ex rel. Empire Mortgage Co.* v. *Cantor,* 197 App. Div. 437, 440.  And rental value.  *People ex rel. Szerlip* v. *Goldfogle,* 118 Misc. Rep. 8. Though the last could be given little effect in this case.  *Hirsch* v. *Weiner,* 116 Misc. Rep. 312.

There is no doubt that, as contended by relator, the value of the premises in the open market, a willing seller, and a willing buyer, is the true rule.  This does not mean an anxious seller and a diffident purchaser, nor does it mean a forced sale.  Market price is the best price the owner could obtain after reasonable and ample time such as would ordinarily be taken by an owner to make sale of like property.

Again the test has been laid down to be " the sum for which it would be appraised for the payment of a just debt by a solvent debtor."  *People ex rel. Fitchburg R. Co.* v. *Haren,* 3 N. Y. Supp. 86.

In another connection the courts have said that the true value is " the fair market value for all available uses and purposes." *Matter of Bronx Parkway Commission,* 191 App. Div. 212, 217.

The courts have, however, made use of a rule in certain instances which I think consists with the circumstances of this case.  It is, that in the case of exceptional property, not designed to yield a rental or income, or to be used for commercial purposes, but wholly or mainly for personal use, benefit and gratification, the property should be assessed at the price it cost where the purchase or improvement is of recent date and it is not shown that the property has since deteriorated in value.  *Cotton Exchange* v. *Assessors,* 37 La. Ann. 423.

In many instances there is no actual demand or current rate of price, either because there have been no sales of similar property, or because the particular property is the only one of its kind in the neighborhood, and no one has been able to use it for the purposes for which it is suitable and for which it may be highly desirable to use it. In such cases it may be said that the property has no proper " value " in the strict sense of the term, and the value must from necessity be arrived at from the opinions of well-informed persons, based upon the purposes for which the property is suitable. By so doing the property is not taken at the " value in use " to the owner, as contradistinguished from the " market value," but what is done is to take into consideration the purposes for which the property is suitable, as a means of ascertaining what a reasonable purchaser would in all probability be willing to give for it, which, in a general sense, may be said to be the " market value." *San Diego Land & Town Co.* v. *Neale,* 78 Cal. 63.

In no sense can it be said that the market value of property is to be arrived at solely from opinion testimony as to what it would bring in the market. In determining market value, it is proper to regard the location, character and probable uses of the properties in the same manner that a prudent seller or purchaser would regard them in fixing their value. And the amount lands would bring in the hands of a prudent seller at liberty to fix the time and conditions of the sale is their market value. *Somerville & Eastern R. R. Co.* v. *Doty,* 22 N. J. Law, 495, 504; *Mississippi, etc., Boom Co.* v. *Patterson,* 98 U. S. 403.

" The most palatial residence in the City (New Orleans) if thrown upon the market for rent, might not bring more than $1,800 or $2,000 a.year. Should it, therefore, be assessed at only $18,000 or $20,000, though its recent cost may have been $50,000 or $75,000? Obviously the rule of experts is not applicable to such cases. There exists, in fact, no rigid rule for the valuation of property, which is affected by a multitude of circumstances which no rule could foresee or provide for. The assessors must consider all these circumstances and elements of value, and must exercise a prudent discretion in reaching conclusions." *Cotton Exchange* v. *Assessors, supra.*

From a careful reading of the testimony, of the respective briefs of counsel, and giving the respondents the benefit of every reasonable intendment, I conclude that the assessment of this property in the amount found represents the full and true value thereof.

Coming to a consideration of the second ground of relator's attack upon this assessment, I hold that the assessors have adopted a proper and just method of assessing property in the city of

Corning. I find no evidence of inequality, discrimination or lack of proportion.

It is difficult to conceive of a more practical or accurate manner of assessing a property than that which was observed in the assessment of the property in question and the sixteen other pieces, concededly comprising the finest residential properties in the city and forming, as they do, a distinct and plainly distinguishable species of property.

It seems to me that these seventeen properties in the city of Corning are assessed in the amounts that the proof plainly shows they should be, especially in comparison with the selling prices and assessed values of the other more modest properties, so many of which are found recorded in the testimony, and measured by the rule in *People ex rel. Strong* v. *Hart*, 216 N. Y. 513, the relator must fail upon this specification of his petition also.

I have examined with care the well-reasoned opinion of the able and painstaking referee in this case and find myself in full accord therewith; as also with the conclusions of law and findings of fact he has reached.

The assessment is, therefore, confirmed and the report of the referee, his conclusions of law and his findings of fact are adopted and confirmed, and the writ dismissed, with costs and disbursements against the petitioner. Tax Law, § 294.

Ordered accordingly.