CONTINENTAL RESOURCES v. WOLLA OILFIELD SERVICES
2022 OK 40
510 P.3d 175
Case Number: 120039
Decided: 05/03/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 40, 510 P.3d 175

 
 

CONTINENTAL RESOURCES, INC., Plaintiff,
v.
WOLLA OILFIELD SERVICES, LLC, Defendant.

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT 
COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

¶0 The United States District Court for the Western District of Oklahoma certified two questions of state law which have been addressed by this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2021, §§ 1601-1611.

CERTIFIED QUESTIONS ANSWERED

Nicholas V. Merkley, GableGotwals, Oklahoma City, Oklahoma, for Plaintiff.

Daniel G. Webber, Jr., Ryan Whaley, Coldiron Jantzen Peters & Webber, PLLC, Oklahoma City, Oklahoma, for Defendant.

COMBS, J.:

¶1 The United States District Court for the Western District of Oklahoma (certifying court) certified two questions of state law to this Court under the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2021, §§ 1601-1611.

(1) Does the Oklahoma Consumer Protection Act apply to conduct that physically occurs outside the state of Oklahoma?

(2) Does the Oklahoma Consumer Protection Act apply to conduct where, even if the physical location is difficult to pinpoint, such actions or transactions have a material impact on, or material nexus to, a consumer in the state of Oklahoma?

I. CERTIFIED FACTS AND PROCEDURAL HISTORY

¶2 The underlying facts in this cause are set out in the certification order from the Western District. In answering a certified question, the Court does not presume facts outside those offered by the certification order. Howard v. Zimmer, Inc., 2013 OK 17299 P.3d 463In re Harris, 2002 OK 3549 P.3d 710Jones v. Univ. of Cent. Okla., 1995 OK 138910 P.2d 987Howard, 2013 OK 17McQueen, Rains, & Tresch, LLP v. CITGO Petroleum Corp., 2008 OK 66195 P.3d 35In re Harris, 2002 OK 35See 20 O.S. 2021, § 1604

¶3 The matter concerns a dispute between Continental Resources, Inc. (Continental), an oil and gas producer headquartered in Oklahoma, and Wolla Oilfield Services, LLC (Wolla), a North Dakota limited liability company that operates as a hot oil

¶4 On March 4, 2020, Continental sued Wolla in the United States District Court for the Western District of Oklahoma asserting, among other claims, a claim under the Oklahoma Consumer Protection Act (OCPA), 15 O.S. 2021, §§ 751

¶5 The certifying court found that Wolla correctly observed an extraterritorial application of the OCPA would raise concerns about the Act's constitutionality under the federal constitution. It noted, the Oklahoma Supreme Court has never adopted a presumption against extraterritorial application and has not yet had occasion to decide the territorial reach of the OCPA. Unlike consumer protection statutes of some sister states, the OCPA does not explicitly limit its consumer protection to conduct occurring within the state. The matter was certified to this Court because it found there was no controlling decision of the appellate courts in Oklahoma. The certifying court did note in Harvell v. Goodyear Tire & Rubber Co., 2006 OK 24164 P.3d 1028 that this Court, when reviewing the applicability of the Ohio Consumer Sales Practices Act, determined "the focus of the inquiry concerning application of such an Act to out-of-state consumers is whether the offending consumer transaction occurred within the state." The certifying court found that the Harvell opinion suggests this Court would limit the OCPA's reach to transactions occurring within Oklahoma.

II. PROCEDURE AND REQUIREMENTS FOR
ANSWERING CERTIFIED QUESTIONS

¶6 Unresolved questions of law may be answered by this Court if certified questions are presented in accordance with the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2021, §§ 1601-1611. Gov't Emps. Ins. Co. v. Quine, 2011 OK 88264 P.3d 1245Russell v. Chase Inv. Servs. Corp., 2009 OK 22212 P.3d 117820 O.S. 2021, § 1602Quine, 2011 OK 88McQueen, Rains & Tresch, LLP, 2008 OK 66Tyler v. Shelter Mut. Ins. Co., 2008 OK 9184 P.3d 496McClure v. ConocoPhillips Co., 2006 OK 42142 P.3d 39020 O.S. 2021, § 1602.1

III. ANALYSIS

¶7 The purpose of the OCPA is to prohibit unlawful practices and conduct made in connection with a consumer transaction. Consumer protection acts are meant to regulate commerce which is infected with deceptive or unconscionable practices and are not meant to be general regulations of "clean" commerce. See Brown v. Mkt. Dev., Inc., 322 N.E.2d 367, 374 (Ohio Ct. Com. Pl. 1974) cited in Harvell, 2006 OK 24

[T]he advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented;

15 O.S. 2021, § 75215 O.S. 2021, § 753

[A] misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;

15 O.S. 2021, § 752Harvell a customer was charged a deceptive shop fee at the time she brought her car in for repairs. We determined "in our view any unfair, deceptive or unconscionable conduct toward a consumer occurred where the transaction occurred--when a customer brought an automobile in for service to a service center and was charged a shop supply fee." Harvell, 2006 OK 24Id. The reason we found the offending conduct occurred where the consumer transaction occurred was based on the particular facts of the case. We were not establishing a rule that the place where the consumer transaction occurs would always be deemed the place where the offending conduct occurs. Again, the focus is on the location of the offending conduct, e.g., where the deceptive trade practice occurs. The offending conduct is what triggers the Act, not otherwise lawful consumer transactions. Other courts are aligned with this interpretation.

¶8 In In re General Motors LLC Ignition Switch Litigation, 154 F. SupP.3d 30 (S.D.N.Y. 2015), the court denied the defendant's summary judgment claim that the OCPA was not applicable to a consumer transaction which occurred in Nevada. The court determined the OCPA "extends to any 'misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead' a consumer, and expressly provides that the challenged 'practice may occur before, during or after a consumer transaction is entered into.'" Id. at 47. The court found that "[p]laintiff's claim is not . . . based on his purchase of the car in Nevada; instead, it is based on [the defendant's] alleged misrepresentations, omissions, and other practices directed toward him in Oklahoma, where he resided." Id. In that case, the plaintiff received a vehicle recall notice in Oklahoma which allegedly omitted information concerning the dangers related to the recall. Similarly, in Goshen v. Mutual Life Insurance Co. of New York, 774 N.E.2d 1190 (N.Y. 2002), when determining the applicability of New York's consumer protection statutes, the New York Court of Appeals determined there is no fraudulent transaction until the deception occurred and therefore the location of the deception was the controlling factor. Id. at 1195-96; see also Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801, 853 (Ill. 2005).

¶9 In Avery the court agreed with Goshen that when dealing with misrepresentations there is no fraudulent transaction until the misrepresentation has been communicated. Avery, 835 N.E.2d at 853. However, the court also found it can be difficult to identify the location of a transaction when it is made up of components that occur in more than one state. In such a situation the court adopted a broader alternative than the one taken by the Goshen court. It determined there was "no single formula or bright-line test for determining whether a transaction occurs within [a] state." Id. Its solution was to find that "a fraudulent transaction may be said to take place within a state if the circumstances relating to the transaction occur primarily and substantially within that state." Id.

¶10 The first certified question is:

(1) Does the Oklahoma Consumer Protection Act apply to conduct that physically occurs outside the state of Oklahoma?

Having determined the location of the offending conduct, i.e., conduct that triggers a violation of the Act, is the focus of an inquiry into whether the OCPA is applicable to a particular matter, we reformulate the first certified question. The reformulated certified question is:

(1) Does the Oklahoma Consumer Protection Act apply to a consumer transaction when the offending conduct that triggers the Act occurs solely within the physical boundaries of another state?

We answer this reformulated question in the negative.

¶11 The second certified question is:

(2) Does the Oklahoma Consumer Protection Act apply to conduct where, even if the physical location is difficult to pinpoint, such actions or transactions have a material impact on, or material nexus to, a consumer in the state of Oklahoma?

As to this second certified question, we also answer in the negative. The mere fact that a transaction has a material impact on or nexus to a consumer in Oklahoma, without more, is not enough to invoke this state's consumer protection laws. The focus is on the location of the offending conduct, and such conduct must occur in this state. When the offending conduct is difficult to pinpoint, likely due to some conduct occurring in more than one state, we adopt the Avery court's approach. When the offending conduct occurs in more than one state, the applicable consumer protection law would be that of the state where the circumstances relating to the offending conduct primarily and substantially occur. To hold otherwise could raise the valid concerns voiced by the certifying court. The certifying court noted that the "normal presumption against extra-territorial application [of a state's statutes] would suggest that the OCPA cannot reach transactions occurring outside of the state." It found that this Court has never adopted a presumption against extraterritorial application, presumably in regards to the OCPA. The concern is based upon the federal constitution. The dormant Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders." Healy v. Beer Inst., Inc., 491 U.S. 324, 336 (1989). A statute may violate the dormant Commerce Clause if it has the practical effect of extraterritorial control of commerce occurring entirely outside of the boundaries of the state in question. KT & G Corp v. Att'y Gen., 535 F.3d 1114, 1143 (10th Cir. 2008). Without express language giving a statute extraterritorial application, courts will presume that a legislature acted within the constitutional scope of its powers to create valid legislation and that it did not intend to give its enactments impermissible extraterritorial operation. 82 C.J.S. Statutes § 362 (2022). In Childs v. State ex rel. Oklahoma State University, 1993 OK 18848 P.2d 571Id. ¶13, 848 P.2d at 576. The OCPA does not provide an express limitation on its territorial scope. Its silence will not be presumed to include an extraterritorial application. Until such an express amendment is made to the law, we adopt a presumption against an extraterritorial application of the OCPA.

CONCLUSION

¶12 Conduct which creates a violation of the OCPA must occur within this state in order for the OCPA to be applicable. If such offending conduct occurs in more than one state then a court must determine where the conduct primarily and substantially occurs. These principles are the basis for our answers to the certified and reformulated questions. The first certified question is:

(1) Does the Oklahoma Consumer Protection Act apply to conduct that physically occurs outside the state of Oklahoma?

We reformulate the question as follows:

(1) Does the Oklahoma Consumer Protection Act apply to a consumer transaction when the offending conduct that triggers the Act occurs solely within the physical boundaries of another state?

We answer this reformulated question in the negative. The second certified question is:

(2) Does the Oklahoma Consumer Protection Act apply to conduct where, even if the physical location is difficult to pinpoint, such actions or transactions have a material impact on, or material nexus to, a consumer in the state of Oklahoma?

We also answer this question in the negative. When answering certified questions this Court's examination is confined to resolving questions of law, not facts. Having answered these questions, it is for the certifying court to resolve any and all fact questions and to apply the law as provided herein.

CERTIFIED QUESTIONS ANSWERED

All Justices Concur

FOOTNOTES

CDR Sys. Corp. v. Okla. Tax Comm'n, 2014 OK 31339 P.3d 848